[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-13157
Non-Argument Calendar
_____

D.C. Docket No. 2:16-cr-00412-AKK-HNJ-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RASHAAD DESHAUN FOSTER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(May 21, 2018)

Before MARCUS, JILL PRYOR and FAY, Circuit Judges.

PER CURIAM:

Rashaad Deshaun Foster appeals his 110-month sentence which the district court imposed after he pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  Foster challenges the district court's denial of his request for a sentence reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1.  After careful review, we affirm.

## I.    BACKGROUND

After responding to a call reporting gunshots fired in the area, Birmingham police officers, acting on a witness's description of the vehicle from which the shots were fired, made an investigatory stop of Foster's vehicle.  During the stop, one of the officers observed what appeared to be a gun magazine lying on the front passenger seat.  The officer asked Foster to step out of the vehicle.  Upon exiting the vehicle, Foster attempted to flee, but the officers quickly apprehended him and placed him under arrest.  A subsequent search of the vehicle yielded a .45 caliber loaded pistol found underneath the driver's seat.  Foster was arrested due to his previous felony conviction.

In the days following his arrest, Foster placed a phone call using another inmate's PIN number.  During the call, Foster offered to pay an individual to claim ownership of the gun charged in this case, which also had led to a state criminal charge.  Over the next two weeks, Foster made three more phone calls, during which he further pressured the individual to claim ownership of the gun.  Foster

2

coached the individual through the circumstances leading up to Foster's arrest, preparing the individual to testify falsely in state court on his behalf. The individual falsely testified in Foster's state-court case, claiming ownership of the gun.

A federal grand jury indicted Foster for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). In an interview at the jail, Foster said that he accepted responsibility for possessing the gun, adding that he had requested a plea deal from the government on multiple occasions. Approximately ten months after the phone calls, Foster entered a guilty plea without a plea agreement.

Leading up to sentencing, a probation officer prepared a Presentence Investigation Report ("PSI"). In the PSI, the probation officer applied a two-level enhancement under U.S.S.G. § 3C1.1 for obstruction of justice and refused to apply a two-level reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility. Foster objected to the refusal to apply a two-level reduction for acceptance of responsibility, arguing that three factors, together, entitled him to the reduction. First, he pled guilty in the absence of a plea agreement despite knowing the government was seeking a maximum sentence. Second, he did not contest the obstruction of justice enhancement. Third, he submitted a contrite letter to the district court, accepting responsibility for possession of the firearm.

3

During sentencing, the district court applied the obstruction of justice enhancement due to Foster's repeated phone calls urging an individual to testify falsely on his behalf.   The district court also refused to apply a two-level reduction for acceptance of responsibility.  The district court weighed the factors Foster presented against the nature of his obstructive conduct, specifically that he "was trying to get someone to ultimately say the gun was theirs so that he would avoid potential liability," and, "[b]ased on the circumstances as a whole," the court refused to apply the two-level acceptance of responsibility reduction.  Doc. 36 at 12-13.[1]  The district court sentenced Foster to 110 months' imprisonment.  This is his appeal.

## II.      STANDARDS OF REVIEW

We review the district court's denial of an acceptance of responsibility sentencing adjustment under U.S.S.G. § 3E1.1 for clear error.  *United States v. Tejas*, 868 F.3d 1242, 1246 (11th Cir. 2017).  A factual finding at sentencing is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Barrington*, 648 F.3d 1178, 1195 (11th Cir. 2011) (internal quotation marks omitted).  The district court is in a unique position to evaluate whether a defendant has accepted responsibility for his

---

[1] Citations to "Doc. #" refer to docket entries in the district court record.

4

acts, and this determination is entitled to great deference on review.  U.S.S.G.

§ 3E1.1 cmt. n.5; *see Tejas*, 868 F.3d at 1248.  We will not set aside a district

court's denial of a U.S.S.G. § 3E1.1 adjustment unless the facts in the record

clearly establish that the defendant accepted responsibility.  *Tejas*, 868 F.3d at

1248.  The defendant bears the burden of proving he accepted responsibility.

*United States v. Sawyer*, 180 F.3d 1319, 1323 (11th Cir. 1999).

### III.    DISCUSSION

Foster argues that we should reverse the district court's denial of a two-level

sentencing reduction for acceptance of responsibility based on two lines of

reasoning.  First, he contends that the district court failed to consider the totality of

the circumstances, including the nature of his obstructive conduct and the degree

and extent of his acceptance of responsibility.  To support this assertion, he focuses

on an Eighth Circuit case in which the court listed several examples of relevant

factors that a district court should consider in its totality of the circumstances

analysis.  *See United States v. Honken*, 184 F.3d 961, 968 (8th Cir. 1999).  Second,

Foster argues that the district court appeared to believe, erroneously, that the

application of the sentencing enhancement for obstruction terminated its authority

to consider other factors that might warrant a reduction for acceptance of

responsibility.  We are unconvinced by either of these arguments and conclude that

the district court did not clearly err in denying Foster a reduction for acceptance of responsibility.

The Sentencing Guidelines provide for a two-level reduction if the defendant clearly demonstrates acceptance of responsibility for his offense.  U.S.S.G. § 3E1.1(a); *Tejas*, 868 F.3d at 1247.  In determining whether a defendant qualifies for this reduction, appropriate considerations include, but are not limited to:  (1) truthfully admitting to the conduct comprising the conviction; (2) voluntary termination of criminal conduct; (3) voluntary surrender to authorities promptly after commission of the offense; (4) post-offense rehabilitation efforts; and (5) the timeliness of the defendant's conduct in manifesting acceptance of responsibility. U.S.S.G. § 3E1.1 cmt. n.1.

If the defendant enters a guilty plea before trial begins, combined with truthfully admitting the conduct comprising the offense and not falsely denying any additional relevant conduct, these factors constitute significant evidence of acceptance of responsibility.  U.S.S.G. § 3E1.1 cmt. n.3.  This evidence may be outweighed, however, by conduct that is inconsistent with acceptance of responsibility, such as obstructing justice.  *Id.*  In fact, the Sentencing Guidelines specifically note that conduct resulting in an enhancement under U.S.S.G. § 3C1.1 for obstruction of justice ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct.  U.S.S.G. § 3E1.1 cmt. n.4.  Only under

6

extraordinary circumstances will adjustments under both U.S.S.G §§ 3C1.1 and 3E1.1 apply.  *Id.*

Addressing Foster's first argument, the district court did not fail to consider the totality of the circumstances in this case.  Foster argues the district court did not consider the nature of the obstructive conduct and the degree and extent of his acceptance of responsibility, citing *Honken*.  Assuming for purposes of this opinion that we consider *Honken* to be persuasive authority, *Honken* does not show that the district court erred in Foster's case.  In *Honken*, the Eighth Circuit rejected the district court's conclusion that if a defendant who obstructed justice pled guilty to the underlying offense and committed no further obstructive conduct, the court must consider the case "extraordinary" and apply a sentencing reduction for acceptance of responsibility.  *Id.* at 968.  In rejecting the district court's bright-line rule, the *Honken* court reasoned that, to determine if a case is extraordinary, the district court must consider the totality of the circumstances, including the nature of the defendant's obstructive conduct and the degree of the acceptance of responsibility.  *Id.*  In considering these circumstances, the *Honken* court provided examples of factors courts should consider, including whether:  (1) the obstructive conduct was an isolated incident early in the investigation or an on-going effort to obstruct the prosecution; (2) the defendant voluntarily terminated the obstructive conduct or whether law enforcement terminated the conduct; (3) the defendant

7

admitted and recanted the obstructive conduct; and (4) the defendant assisted in the investigation of the underlying offense and offenses of others. *Id.* *Honken* made clear that these examples are not all inclusive, and district courts should consider all relevant circumstances in their analysis. *Id.* at 969.

Foster relies on the first and third examples discussed by the Eighth Circuit in *Honken*—whether the obstructive conduct was isolated and whether the defendant admitted and recanted the obstructive conduct—and asserts that the district court in his case erred by failing to consider these factors. He emphasizes that considerable time had passed between his obstructive conduct and sentencing, and that, during that time, he did not replicate any similar obstructive behavior. Foster also points to his statements accepting responsibility, recounted in the PSI, including that he accepted responsibility for the firearm, never wanted to take his case to trial, and requested a plea deal from the government on multiple occasions. Further, he notes that he pled guilty, despite the government's refusal to offer a plea agreement, while facing the statutory maximum sentence.

Foster's argument does not establish that the district court failed to consider the totality of the circumstances, however, and Foster also fails to mention the remaining factors from *Honken*, which ultimately weigh against a reduction for acceptance of responsibility. The record reflects that the district court heard argument on a number of facts and circumstances related to Foster's obstructive

conduct and acceptance of responsibility and based its conclusion on the totality of the circumstances.

The district court listened to Foster's argument regarding his letter to the court accepting responsibility for his conduct and the absence of a plea agreement, which exposed Foster to the statutory maximum sentence. The district court weighed these factors against the nature and extent of the obstructive conduct, including that Foster placed phone calls from jail—using another inmate's PIN number to avoid law enforcement detection—in order to pay someone to testify falsely in state court, and that individual did in fact commit perjury on Foster's behalf in state court. Foster's failure to voluntarily terminate the obstructive conduct is in direct contrast with the Sentencing Guidelines commentary and the *Honken* court's examples of when both adjustments should apply. *See* U.S.S.G. § 3E1.1 cmt. n.1; *see also Honken*, 184 F.3d at 968. Not only did Foster fail to terminate the obstructive conduct, but the obstructive conduct achieved its purpose, convincing an individual to commit perjury on his behalf, which resulted in the commission of an additional crime. While Foster did not engage in any similar obstructive conduct during the time between the conduct and sentencing, it is unclear what incentive to further obstruct justice remained after Foster had succeeded in his original plan. Foster presented no evidence that he assisted in the investigation of his offense or the offenses of others. *See Honken*, 184 F.3d at 968.

9

The nature of the obstructive conduct in this case weighs against Foster's acceptance of responsibility, and the circumstances do not fall into the extraordinary category contemplated by the Sentencing Guidelines where both adjustments should apply.

Regarding Foster's second argument, he has failed to show that the district court erroneously believed that application of the obstruction enhancement rendered it without authority to consider other factors that might suggest Foster accepted responsibility for his offense.  The district court stated that its decision was "based on the circumstances as a whole," indicating that the court recognized its authority to weigh each factor, without a bright-line rule preventing the court from applying an acceptance of responsibility reduction.  Doc. 36 at 12.  Considering the totality of circumstances, the district court simply did not find this case to be so extraordinary as to warrant a sentence reduction for acceptance of responsibility after Foster obstructed justice.

Based on the district court's unique position to evaluate whether a defendant has accepted responsibility, and Foster's failure to overcome his burden to show clear error, for the reasons set forth above, we affirm the judgment of the district court.

**AFFIRMED.**

10